**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

JANE DOE,

               Plaintiff,

v.
BOSTON SCIENTIFIC CORPORATION;
BOSTON SCIENTIFIC CARDIAC
DIAGNOSTIC SERVICES, LLC;
BOSTON SCIENTIFIC SALES, INC.;
BOSTON SCIENTIFIC NEUROMODULATION
CORPORATION; and NICHOLAS
BARCELONA, an individual,

               Defendants.

No. _____

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Jane Doe, by and through her attorneys, for her Complaint against Defendants

Boston Scientific Corporation, Boston Scientific Cardiac Diagnostic Services, LLC, Boston

Scientific Sales, Inc., Boston Scientific Neuromodulation Corporation (collectively, "Boston

Scientific") and Nicholas Barcelona ("Barcelona"), alleges as follows:

### NATURE OF THE ACTION

1. This is an action for sex discrimination, including quid pro quo sexual harassment,

hostile and abusive sex-based harassment in the hiring process, race discrimination, national-origin

discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e et seq.

2. This action also arises under Illinois law and includes claims for battery, gender-

related violence, intentional infliction of emotional distress, vicarious liability/respondeat superior,

and negligent hiring, negligent supervision, and negligent retention.

1

3.      Plaintiff brings this action under a pseudonym because the case involves allegations of sexual assault and highly sensitive sexual misconduct. Plaintiff will file contemporaneously, or has filed contemporaneously, a motion seeking leave to proceed under a pseudonym and for appropriate protection of identifying information.

**JURISDICTION AND VENUE**

4.      This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3).

5.      This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy.

6.      Venue is proper in this District under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because a substantial part of the events and omissions giving rise to these claims occurred in this District, including interview-related events in Chicago, Illinois, the adverse actions affecting Plaintiff's candidacy, and Defendants' relevant conduct in or directed to this District.

7.      Boston Scientific transacts business in this District and employed, authorized, supervised, or permitted relevant management personnel to act in this District.

8.      Defendant Barcelona resided in or regularly conducted relevant business in this District at the time of the events alleged herein.

**PARTIES**

9.      Plaintiff Jane Doe is a woman of Asian race and Indian national origin. She is a resident of Illinois.

2

10. At all relevant times, Plaintiff was an applicant for employment with Boston Scientific within the meaning of Title VII.

11. Defendant Boston Scientific Corporation is, and at all relevant times was, a corporation doing business in Illinois and an employer within the meaning of Title VII.

12. Defendant Boston Scientific Cardiac Diagnostic Services, LLC is, and at all relevant times was, a limited liability company doing business in Illinois and/or otherwise involved in Boston Scientific's business operations relevant to the allegations herein.

13. Defendant Boston Scientific Sales, Inc. is, and at all relevant times was, a corporation doing business in Illinois and/or otherwise involved in Boston Scientific's sales operations relevant to the allegations herein.

14. Defendant Boston Scientific Neuromodulation Corporation is, and at all relevant times was, a corporation affiliated with Boston Scientific and/or involved in Boston Scientific's business operations relevant to the allegations herein.

15. Unless otherwise specified, "Boston Scientific" as used in this Complaint refers collectively to Boston Scientific Corporation, Boston Scientific Cardiac Diagnostic Services, LLC, Boston Scientific Sales, Inc., and Boston Scientific Neuromodulation Corporation.

16. Upon information and belief, Defendant Nicholas Barcelona is an individual who, at all relevant times, was employed by and/or acted on behalf of Boston Scientific in a management-level role and was presented to Plaintiff as the hiring contact, decision-maker, and gatekeeper for the Area Business Strategist position for which Plaintiff applied.

**CONDITIONS PRECEDENT**

17.     Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and dual-filed with the Illinois Department of Human Rights.

18.     The EEOC charge named Boston Scientific and alleged discrimination based on sex, race, national origin, and retaliation arising out of the hiring process and the conduct described below.

19.     On March 24, 2026, the EEOC issued Plaintiff a Notice of Right to Sue on Charge No. 440-2026-04860.

20.     Plaintiff is filing this action within ninety days of her receipt of the EEOC's Notice of Right to Sue.

21.     All conditions precedent to the filing of this action have been performed, satisfied, or otherwise occurred.

**FACTUAL ALLEGATIONS**

22.     In or about late May 2025, Plaintiff applied for employment with Boston Scientific for an Area Business Strategist position.

23.     Plaintiff was referred by a Boston Scientific executive, Frank Fernandez.

24.     Plaintiff was directed to Defendant Barcelona as the hiring contact, decision-maker, and gatekeeper for the position.

25.     Boston Scientific, through its personnel and agents, clothed Barcelona with actual and/or apparent authority over Plaintiff's candidacy and the hiring process.

4

26. Plaintiff reasonably understood that Barcelona exercised substantial authority, influence, and control over whether she would advance in or obtain the position.

27. On or about the evening of June 5, 2025, Plaintiff met Barcelona in person at "Maple & Ash", a restaurant and bar in Chicago, for what Barcelona represented to be a professional interview regarding the Area Business Strategist position.

28. Plaintiff attended that meeting for the purpose of pursuing employment with Boston Scientific.

29. The meeting took place at the bar and alcohol was consumed.

30. During the meeting, Barcelona used the interview setting, the power imbalance, and his claimed control over the hiring process to engage in coercive and sexually charged misconduct.

31. Barcelona exploited what Plaintiff reasonably understood to be a professional interview and recruiting interaction.

32. Later that evening, Barcelona induced Plaintiff's intoxication and took Plaintiff to his residence under false pretenses related to continuing interview-related discussion about the role.

33. At his residence, Barcelona engaged in non-consensual sexual conduct with Plaintiff.

34. Barcelona's conduct was intentional, offensive, harmful, and without Plaintiff's consent.

35. Plaintiff did not seek, invite, or consent to the sexual conduct.

36.     The conduct was explicitly or implicitly tied to Plaintiff's employment opportunity and candidacy.

37.     Shortly thereafter, Plaintiff was informed, explicitly or implicitly, that she would no longer be considered for the position.

38.     In the days that followed, Barcelona contacted Plaintiff and made statements indicating awareness of wrongdoing.

39.     Plaintiff expressed confusion, distress, and concern regarding retaliation as a candidate.

40.     Between approximately June 17 and June 25, 2025, Plaintiff followed up regarding the job opportunity, and communications from Barcelona ceased.

41.     On or about June 30, 2025, Plaintiff sent a written message alleging moral, ethical, and legal violations and requesting clarification regarding her candidacy.

42.     Between approximately July 7 and July 15, 2025, Plaintiff reported the misconduct internally.

43.     Boston Scientific purportedly initiated an internal investigation and/or Employee Relations review, including the involvement of Jorge Azocar, Director of Employee Relations.

44.     Plaintiff provided text-message evidence and detailed accounts of the incident and related statements.

45.     Plaintiff cooperated with Boston Scientific's internal process and "investigation".

46.     On or about August 1, 2025, Plaintiff was informed that Boston Scientific had taken action, and Barcelona was later confirmed to have been terminated.

47. Between approximately August 3 and August 7, 2025, Plaintiff requested that her employment opportunity be restored.

48. Plaintiff rejected any proposal by Boston Scientific that she perceived as an attempt to buy her silence, rather than provide meaningful relief.

49. On or about August 5, 2025, Employee Relations stated that the matter was "closed," and Plaintiff's candidacy was not and would not be restored.

50. Plaintiff opposed and refused the conduct described above.

51. After Plaintiff refused Barcelona's conduct and after Plaintiff later reported that conduct to Boston Scientific, Boston Scientific denied or withheld the employment opportunity and continued excluding Plaintiff from consideration for the position, and Plaintiff's refusal and report were motivating factors in those actions.

52. Plaintiff was subjected to sex-based harassment, including quid pro quo harassment and hostile and abusive sex-based misconduct, during the hiring process.

53. Plaintiff was denied an employment opportunity and/or excluded from consideration after opposing and reporting the misconduct.

54. Plaintiff further alleges that her race (Asian), national origin (Indian), and/or sex (female) were motivating factors in Boston Scientific's handling of her candidacy and her internal report of Barcelona's misconduct, and in the adverse outcomes she experienced.

55. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of employment opportunity, loss of wages and future earning capacity, emotional distress, psychological harm, humiliation, pain and suffering, and professional and reputational harm.

7

56.     Prior to and on June 5, 2025, Boston Scientific knew or should have known that Barcelona was unfit to be placed in a position of authority over female applicants, including authority to meet applicants alone, to direct interview settings, to consume alcohol with applicants, and to control their access to employment opportunities.

57.     Upon information and belief, before June 5, 2025, Barcelona had engaged in prior inappropriate, coercive, sexually charged, and/or otherwise improper conduct of a similar character, and Boston Scientific knew or, through the exercise of reasonable care, should have known facts indicating that he posed a danger to applicants and/or women over whom he exercised workplace power or influence.

58.     Boston Scientific failed to use reasonable care in hiring, supervising, monitoring, training, and/or retaining Barcelona for duties that gave him access to and power over job applicants such as Plaintiff.

59.     Boston Scientific knew or should have known that placing a male management-level employee in an unsupervised gatekeeper role over female applicants, and permitting him to control one-on-one in-person meetings involving alcohol and after-hours interactions, created a foreseeable risk of sexual harassment, coercion, abuse of authority, exploitation, and harm.

60.     Boston Scientific failed to implement or enforce reasonable safeguards governing applicant interviews, including safeguards concerning one-on-one offsite interviews, alcohol consumption in interview-related meetings, after-hours interactions, and the use of private residences in connection with recruiting activity.

61.     Boston Scientific's negligence created or substantially increased the risk that Barcelona would exploit his role and authority to harm Plaintiff and other applicants.

62. Boston Scientific failed to provide a reasonably safe, professionally supervised, and non-discriminatory hiring process for Plaintiff and other similarly situated applicants.

## BOSTON SCIENTIFIC'S HISTORY OF SEX-BASED HARASSMENT, HOSTILE CULTURE, RETALIATION, AND NOTICE OF SIMILAR MISCONDUCT

63. Prior to May 2025, Boston Scientific had already developed a history of sex-based harassment, hostile treatment of women, retaliation against employees who complained, and inadequate control over male management personnel and male employees acting under color of company authority.

64. Boston Scientific maintained sales divisions that were overwhelmingly male and permeated by a pervasive "boys' club" culture.

65. Male members of management were permitted to harass and denigrate women with impunity, and complaining to superiors about discrimination was understood as "career suicide."

66. Female employees in different regions were subjected to similar forms of discriminatory treatment, including sexual advances, professionally harmful actions, the taking away of accounts, increased quotas, reduced opportunities for compensation and promotion, and retaliation that damaged women's careers and standing within the company.

67. Boston Scientific fostered and tolerated a "boys' club" atmosphere hostile to women and relied on exclusionary male social networks and management-controlled selection processes that favored men over women in advancement and opportunity.

68. Boston Scientific fostered and tolerated a culture of heavy drinking, late-night socializing, and blurred professional boundaries at company meetings and management events, including an event at which male upper-management personnel became intoxicated, yelled obscenities at event staff, and passed out while senior leadership witnessed the behavior and failed to intervene.

9

69. Male managers subjected women to verbal and physical sexual harassment, including putting hands down a female employee's pants, making taunting remarks about her underwear, publicly commenting on her body, and making repeated unwanted sexual comments.

70. Boston Scientific applied gender stereotypes in policing conduct, including failing to reprimand intoxicated male employees for inappropriate behavior while cautioning female employees not to be "inappropriate."

71. Women who complained of discrimination or threatened legal action were met with retaliation, including interference with client relationships, loss of revenue and bonus compensation, removal of accounts or doctors from territories, exclusion from important communications, and other professionally damaging consequences.

72. Boston Scientific was also confronted with complaints that women who reported discriminatory treatment were warned not to put those complaints in writing because such emails "get people fired," were told not to report misconduct to Human Resources, and were then retaliated against after doing so, including removal from high-paying accounts and express statements that they were not part of the "boys' club."

73. Boston Scientific was further confronted with complaints that male decision-makers denied women fair access to interviews, promotions, accounts, compensation guarantees, and management opportunities while favoring less qualified men.

74. Boston Scientific was further confronted with complaints that women were pressured to engage in one-on-one, non-work-related social interactions with male physicians and decision-makers outside normal work boundaries, and that objections to those blurred professional boundaries were ignored.

75. Boston Scientific was also confronted with complaints that internal investigations into discrimination and retaliation complaints were not meaningful, and that instead of investigating the substance of complaints, Boston Scientific turned the investigation onto the complainant and used the process to justify adverse action.

76. On March 18, 2015, Boston Scientific was sued in the Central District of California in *Fretter et al. v. Boston Scientific Neuromodulation Corporation*, Case No. 2:15-cv-01988-DSF-JC, on allegations of systematic gender discrimination, retaliation against women who complained to company leaders or Human Resources, and a culture in which male management was free to harass and denigrate women with impunity.

77. That action further alleged that Boston Scientific Neuromodulation Corporation was a division of Boston Scientific Corporation and that Boston Scientific Corporation had acquired the Neuromodulation division in June 2007.

78. That action further alleged that, within Boston Scientific's Neuromodulation sales organization, leadership was centralized and predominantly male, controlled compensation, promotions, performance evaluations, assignments, and terminations, and that senior sales leadership positions had never been filled by a woman, while the AVP and ASD positions remained exclusively male until the first female AVP was promoted in late 2013.

79. That action also alleged that women within the Neuromodulation sales organization were subjected to discriminatory treatment, retaliation for complaints, and barriers to advancement and equal opportunity.

80. On or before March 12, 2020, Boston Scientific was sued in the Western District of Washington in *Droz v. Boston Scientific Corporation*, No. 2:20-cv-00048-RSM-DWC, on

allegations of sex discrimination and retaliation, including allegations that Boston Scientific's sales divisions were overwhelmingly male and had a pervasive "boys' club" culture.

81. That action further alleged that a female employee who complained in writing in 2007 about being called "the skirt," "honey," and "sweetie" was told never to put such accusations in writing because such emails "get people fired," was admonished not to report the conduct to Human Resources, and was then removed from one of her highest-paying accounts and told she was not part of the "boys' club."

82. That action also alleged that a qualified female employee was denied a planned interview while seven months pregnant, was told she would be too "busy" with her baby, and was later denied promotion in favor of men after key accounts were reassigned to male employees.

83. On April 4, 2019, Boston Scientific Corporation, Boston Scientific Neuromodulation Corporation, and related defendants were sued in the Superior Court of California, County of Los Angeles, in *Karnati v. Boston Scientific Corporation, et al.*, Case No. 19STCV11650, in an action asserting, among other things, negligent hiring, supervision, and retention and intentional infliction of emotional distress.

84. On May 6, 2022, Boston Scientific Corporation was sued in the District of Massachusetts in *Harpin v. Boston Scientific Corporation*, Civil Action No. 1:22-cv-10692-RGS, on allegations that after the plaintiff complained of discrimination, Boston Scientific did not conduct a meaningful investigation into those complaints, but instead "investigated" the complainant and his management style, then used that process to justify termination and label him a "toxic" manager.

85. Upon information and belief, Boston Scientific resolved one or more of the foregoing matters without any adjudication on the merits.

12

86. These allegations, lawsuits, and resolutions placed Boston Scientific on notice, prior to the events alleged here, of repeated accusations involving sex-based mistreatment, retaliation for complaints, dysfunctional complaint handling, abuse of managerial power, blurred professional boundaries, and inadequate supervision of employees acting under company authority.

87. Boston Scientific therefore had notice that male management personnel and male employees acting under color of company authority posed a foreseeable risk of sex-based harassment, coercion, retaliation, abuse of authority, and professionally damaging exclusion directed at women.

88. Boston Scientific also had notice that complaints of discrimination and harassment were met not only with inaction, but with retaliation, exclusion, and adverse professional consequences.

89. This history placed Boston Scientific on notice of the foreseeable risk that male management personnel and male employees acting under color of company authority would subject women to sex-based harassment, coercion, retaliation, abuse of authority, and professionally damaging exclusion, and is relevant to Boston Scientific's knowledge, motive, intent, recklessness, punitive damages, and liability for negligent hiring, negligent supervision, and negligent retention.

## COUNT I
## TITLE VII SEX DISCRIMINATION / QUID PRO QUO SEXUAL HARASSMENT AND DENIAL OF EMPLOYMENT OPPORTUNITY
### (Against Defendant Boston Scientific)

90. Plaintiff realleges paragraphs 1 through 89 as though fully set forth herein.

13

91. Title VII prohibits an employer from discriminating against an applicant with respect to hiring or the terms, conditions, or privileges of employment because of sex.

92. Plaintiff was an applicant for employment with Boston Scientific.

93. During the hiring process, Boston Scientific, through its agent Barcelona, subjected Plaintiff to unwelcome sex-based harassment, coercive sexual conduct, and non-consensual sexual conduct.

94. Barcelona acted with actual and/or apparent authority as the hiring contact, decision-maker, and gatekeeper for the position.

95. The harassment and sexual conduct were explicitly or implicitly tied to Plaintiff's employment opportunity and candidacy.

96. Plaintiff opposed and refused the conduct.

97. Thereafter, Boston Scientific denied or withheld the employment opportunity and continued excluding Plaintiff from consideration.

98. Boston Scientific is liable for the discriminatory acts of its agent because the misconduct was committed by a person acting with hiring authority or apparent hiring authority and resulted in a tangible employment action, including denial or withholding of the position and continued exclusion from consideration.

99. Boston Scientific discriminated against Plaintiff because of sex in violation of Title VII.

100. As a direct and proximate result, Plaintiff suffered damages.

WHEREFORE, Plaintiff Jane Doe respectfully requests judgment in her favor and against Defendants Boston Scientific Corporation, Boston Scientific Cardiac Diagnostic Services, LLC, Boston Scientific Sales, Inc., and Boston Scientific Neuromodulation Corporation on Count I, together with compensatory damages, back pay, lost wages, lost employment benefits, front pay and/or equitable relief, punitive damages, prejudgment and post-judgment interest, attorneys' fees, costs, and such other and further relief as the Court deems just and proper.

## COUNT II
## TITLE VII SEXUAL HARASSMENT / HOSTILE AND ABUSIVE HIRING PROCESS
### (Against Defendant Boston Scientific)

101.    Plaintiff realleges paragraphs 1 through 100 as though fully set forth herein.

102.    Boston Scientific, through Barcelona, subjected Plaintiff to unwelcome sexual conduct and sex-based harassment during the hiring process.

103.    The conduct was severe and offensive, altered the conditions of the hiring process, and deprived Plaintiff of a fair and nondiscriminatory opportunity to compete for employment.

104.    The conduct included coercive and sexually charged misconduct during what was represented to be a professional interview, followed by non-consensual sexual conduct.

105.    The conduct was sufficiently severe, abusive, humiliating, and degrading to create a hostile and abusive hiring process for Plaintiff because of her sex.

106.    Boston Scientific is liable because Barcelona acted as its management-level representative in the hiring process and because the harassment culminated in a tangible employment action.

107.    Boston Scientific thereby violated Title VII.

15

108.    As a direct and proximate result, Plaintiff suffered damages.

WHEREFORE, Plaintiff Jane Doe respectfully requests judgment in her favor and against Defendants Boston Scientific Corporation, Boston Scientific Cardiac Diagnostic Services, LLC, Boston Scientific Sales, Inc., and Boston Scientific Neuromodulation Corporation on Count II, together with compensatory damages, back pay, lost wages, lost employment benefits, front pay and/or equitable relief, punitive damages, prejudgment and post-judgment interest, attorneys' fees, costs, and such other and further relief as the Court deems just and proper.

## COUNT III
## TITLE VII RETALIATION – OPPOSITION / REFUSAL
### (Against Defendant Boston Scientific)

109.    Plaintiff realleges paragraphs 1 through 108 as though fully set forth herein.

110.    Plaintiff engaged in protected activity by opposing and refusing the unlawful sex-based conduct described above.

111.    After Plaintiff engaged in protected activity, Boston Scientific denied or withheld the employment opportunity and continued excluding Plaintiff from consideration.

112.    Such actions would dissuade a reasonable applicant from opposing unlawful discrimination.

113.    Plaintiff's opposition to and refusal of the conduct were motivating and/or but-for causes of the adverse actions.

114.    Boston Scientific retaliated against Plaintiff in violation of Title VII.

115.    As a direct and proximate result, Plaintiff suffered damages.

WHEREFORE, Plaintiff Jane Doe respectfully requests judgment in her favor and against Defendants Boston Scientific Corporation, Boston Scientific Cardiac Diagnostic Services, LLC,

Boston Scientific Sales, Inc., and Boston Scientific Neuromodulation Corporation on Count III, together with compensatory damages, back pay, lost wages, lost employment benefits, front pay and/or equitable relief, punitive damages, prejudgment and post-judgment interest, attorneys' fees, costs, and such other and further relief as the Court deems just and proper.

## COUNT IV
## TITLE VII RETALIATION – INTERNAL REPORTING
**(Against Defendant Boston Scientific)**

116.    Plaintiff realleges paragraphs 1 through 115 as though fully set forth herein.

117.    Plaintiff engaged in protected activity by reporting the misconduct internally and by participating in Boston Scientific's internal investigation.

118.    Boston Scientific knew of Plaintiff's protected activity.

119.    After Plaintiff reported the misconduct, Boston Scientific failed to restore her candidacy, stated that the matter was closed, and continued denying or withholding the employment opportunity.

120.    Those actions would dissuade a reasonable applicant from reporting unlawful discrimination or harassment.

121.    Plaintiff's protected reporting activity was a motivating and/or but-for cause of Boston Scientific's continued exclusion of Plaintiff from the employment opportunity.

122.    Boston Scientific retaliated against Plaintiff in violation of Title VII.

123.    As a direct and proximate result, Plaintiff suffered damages.

WHEREFORE, Plaintiff Jane Doe respectfully requests judgment in her favor and against Defendants Boston Scientific Corporation, Boston Scientific Cardiac Diagnostic Services, LLC, Boston Scientific Sales, Inc., and Boston Scientific Neuromodulation Corporation on Count IV, together with compensatory damages, back pay, lost wages, lost employment benefits, front pay

and/or equitable relief, punitive damages, prejudgment and post-judgment interest, attorneys' fees, costs, and such other and further relief as the Court deems just and proper.

## COUNT V
## TITLE VII RACE DISCRIMINATION
### (Against Defendant Boston Scientific)

124.    Plaintiff realleges paragraphs 1 through 123 as though fully set forth herein.

125.    Plaintiff is a member of a protected class based on race. Plaintiff is Asian.

126.    Boston Scientific denied or withheld the employment opportunity, excluded Plaintiff from consideration, and handled Plaintiff's candidacy and internal report of Barcelona's misconduct adversely.

127.    Plaintiff alleges that her race was a motivating factor in Boston Scientific's denial or withholding of the employment opportunity, its exclusion of Plaintiff from consideration, its handling of Plaintiff's candidacy and internal report of Barcelona's misconduct, and in the adverse outcomes she experienced.

128.    Boston Scientific violated Title VII's prohibition against race discrimination.

129.    As a direct and proximate result, Plaintiff suffered damages.

WHEREFORE, Plaintiff Jane Doe respectfully requests judgment in her favor and against Defendants Boston Scientific Corporation, Boston Scientific Cardiac Diagnostic Services, LLC, Boston Scientific Sales, Inc., and Boston Scientific Neuromodulation Corporation on Count V, together with compensatory damages, back pay, lost wages, lost employment benefits, front pay and/or equitable relief, punitive damages, prejudgment and post-judgment interest, attorneys' fees, costs, and such other and further relief as the Court deems just and proper.

## COUNT VI
## TITLE VII NATIONAL-ORIGIN DISCRIMINATION
### (Against Defendant Boston Scientific)

130.    Plaintiff realleges paragraphs 1 through 129 as though fully set forth herein.

131.    Plaintiff is a member of a protected class based on national origin. Plaintiff is Indian.

132.    Boston Scientific denied or withheld the employment opportunity, excluded Plaintiff from consideration, and handled Plaintiff's candidacy and internal report of Barcelona's misconduct adversely.

133.    Plaintiff alleges that her national origin was a motivating factor in Boston Scientific's denial or withholding of the employment opportunity, its exclusion of Plaintiff from consideration, its handling of Plaintiff's candidacy and internal report of Barcelona's misconduct, and in the adverse outcomes she experienced.

134.    Boston Scientific violated Title VII's prohibition against national-origin discrimination.

135.    As a direct and proximate result, Plaintiff suffered damages.

WHEREFORE, Plaintiff Jane Doe respectfully requests judgment in her favor and against Defendants Boston Scientific Corporation, Boston Scientific Cardiac Diagnostic Services, LLC, Boston Scientific Sales, Inc., and Boston Scientific Neuromodulation Corporation on Count VI, together with compensatory damages, back pay, lost wages, lost employment benefits, front pay and/or equitable relief, punitive damages, prejudgment and post-judgment interest, attorneys' fees, costs, and such other and further relief as the Court deems just and proper.

## COUNT VII
## BATTERY
### (Against Defendant Nicholas Barcelona)

136.    Plaintiff realleges paragraphs 1 through 135 as though fully set forth herein.

137.    Barcelona intentionally caused harmful and/or offensive physical contact with Plaintiff.

138.    Barcelona engaged in non-consensual sexual conduct with Plaintiff.

139.    Plaintiff did not consent to the contact and, at the time of the contact, was intoxicated and unable to give knowing, voluntary consent.

140.    Barcelona's conduct constituted battery under Illinois law.

141.    As a direct and proximate result, Plaintiff suffered bodily invasion, humiliation, severe emotional distress, pain and suffering, and other damages.

WHEREFORE, Plaintiff Jane Doe respectfully requests judgment in her favor and against Defendant Nicholas Barcelona on Count VII, together with compensatory damages, punitive damages to the fullest extent permitted by law, prejudgment and post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

## COUNT VIII
## ILLINOIS GENDER VIOLENCE ACT
### (Against Defendant Nicholas Barcelona)

142.    Plaintiff realleges paragraphs 1 through 141 as though fully set forth herein.

143.    This Count is brought pursuant to the Illinois Gender Violence Act, 740 ILCS 82/1 et seq.

20

144. At all relevant times, Defendant Barcelona was a management-level employee, apparent employee, agent, apparent agent, and/or representative of Boston Scientific acting under color of hiring authority over Plaintiff's candidacy for the Area Business Strategist position.

145. On June 5, 2025, Plaintiff met Barcelona in Chicago for what was represented to her as a professional interview and recruiting interaction concerning the Area Business Strategist position.

146. During and after that interview-related interaction, Barcelona used his asserted authority over Plaintiff's employment opportunity, the power imbalance between them, and Plaintiff's intoxicated condition to isolate Plaintiff and subject her to non-consensual sexual conduct.

147. At the time of the conduct, Plaintiff was intoxicated and unable to give knowing, voluntary, or meaningful consent.

148. Plaintiff did not consent to Barcelona's conduct.

149. Barcelona intentionally engaged in a physical intrusion and physical invasion of a sexual nature against Plaintiff.

150. Barcelona's conduct was committed under coercive conditions, including his exploitation of Plaintiff's intoxication, his asserted hiring authority, and Plaintiff's dependence on him for access to the employment opportunity.

151. Barcelona's conduct constituted battery under Illinois law.

152. Barcelona's conduct constituted gender-related violence within the meaning of the Illinois Gender Violence Act because it involved a physical intrusion or invasion of a sexual nature

under coercive conditions and/or one or more acts of battery committed at least in part on the basis of Plaintiff's sex.

153.    Barcelona's conduct was directed at Plaintiff because she is a woman and occurred in the context of his exploitation of sex-based power over her during the hiring process.

154.    Barcelona knew Plaintiff was vulnerable, intoxicated, and unable to meaningfully consent or resist.

155.    Barcelona used his position as the purported hiring decision-maker and gatekeeper to obtain access to Plaintiff and to facilitate the gender-related violence described herein.

156.    Barcelona's actions were intentional, willful, wanton, and undertaken with conscious disregard for Plaintiff's rights, bodily integrity, dignity, and safety.

157.    As a direct and proximate result of Barcelona's gender-related violence, Plaintiff suffered bodily invasion, humiliation, emotional distress, anxiety, psychological trauma, loss of dignity, pain and suffering, and other injuries.

158.    Plaintiff's injuries are continuing in nature.

159.    Pursuant to the Illinois Gender Violence Act, Plaintiff is entitled to recover actual damages, damages for emotional distress, punitive damages, attorneys' fees, costs, and such other relief as permitted by law.

WHEREFORE, Plaintiff Jane Doe respectfully requests judgment in her favor and against Defendant Nicholas Barcelona on Count VIII, together with actual damages, damages for emotional distress, punitive damages, attorneys' fees, costs, prejudgment and post-judgment interest, and such other and further relief as the Court deems just and proper.

22

## COUNT IX
## ILLINOIS GENDER VIOLENCE ACT – EMPLOYER LIABILITY
### (Against Defendant Boston Scientific)

160. Plaintiff realleges paragraphs 1 through 159 as though fully set forth herein.

161. This Count is brought pursuant to the Illinois Gender Violence Act, 740 ILCS 82/1 et seq.

162. At all relevant times, Boston Scientific owned, operated, controlled, staffed, managed, directed, and/or was responsible for the business operations, hiring process, recruiting process, interview process, and employment-related interactions giving rise to this action.

163. At all relevant times, Defendant Nicholas Barcelona was an employee, apparent employee, agent, apparent agent, and/or management representative of Boston Scientific.

164. At all relevant times, Barcelona was directly performing assigned, authorized, permitted, and/or ostensibly authorized job duties in connection with Plaintiff's candidacy for the Area Business Strategist position, including interviewing, recruiting, evaluating, and communicating with Plaintiff regarding that role.

165. On June 5, 2025, while directly interacting with Plaintiff under color of his assigned and/or apparent hiring authority, Barcelona committed gender-related violence against Plaintiff.

166. Barcelona's conduct constituted a physical intrusion and physical invasion of a sexual nature under coercive conditions and satisfied the elements of battery.

167. The interaction giving rise to the gender-related violence arose out of and in the course of Barcelona's employment-related, interview-related, and hiring-related interactions with Plaintiff on behalf of Boston Scientific.

23

168. Barcelona's access to Plaintiff, his ability to isolate Plaintiff in a purported interview setting, his ability to direct the time, place, and structure of the interaction, and his ability to tie the interaction to Plaintiff's employment opportunity were made possible solely because of his position, role, and authority within Boston Scientific.

169. At all relevant times, Boston Scientific had a duty to supervise, monitor, train, control, and regulate its management-level employees and other personnel interacting with applicants in the hiring process.

170. Boston Scientific failed to exercise reasonable care in supervising, monitoring, training, and controlling Barcelona.

171. Boston Scientific failed to implement reasonable safeguards to protect female applicants from gender-related violence, sexual exploitation, coercion, abuse of authority, and inappropriate conduct by management-level personnel acting under color of hiring authority.

172. Boston Scientific permitted Barcelona to act as an unsupervised gatekeeper over female applicants, including Plaintiff, while directly performing hiring-related duties and functions on Boston Scientific's behalf.

173. Boston Scientific permitted Barcelona to conduct one-on-one interview-related interactions with female applicants outside normal workplace safeguards, including in-person meetings involving alcohol and after-hours interactions, in circumstances that arose out of and in the course of Boston Scientific's hiring process.

174. Boston Scientific failed to require reasonable supervision, oversight, accountability, or monitoring of interview-related interactions between management personnel and female applicants.

175. Boston Scientific failed to implement and enforce reasonable rules prohibiting private-residence interview-related interactions, one-on-one alcohol-centered interview meetings, and other blurred professional boundaries that created foreseeable risks of coercion, abuse, and gender-related violence.

176. Boston Scientific failed to take reasonable measures to prevent male management personnel from exploiting hiring authority to obtain private access to female applicants.

177. Boston Scientific's foregoing failures constituted failures to supervise, train, and monitor within the meaning of the Illinois Gender Violence Act.

178. Prior to and on June 5, 2025, Boston Scientific knew or should have known that Barcelona was unfit to be placed in a position of authority over female applicants, including authority to meet applicants alone, direct interview settings, consume alcohol with applicants, and control their access to employment opportunities.

179. Prior to June 5, 2025, Boston Scientific knew or should have known that placing a male management-level employee in an unsupervised gatekeeper role over female applicants, and permitting him to control one-on-one in-person meetings involving alcohol and after-hours interactions, created a foreseeable risk of gender-related violence, sexual exploitation, coercion, abuse of authority, and harm.

180. Had Boston Scientific exercised reasonable supervision, training, monitoring, and control over Barcelona and the hiring process, Barcelona's conduct would have been prevented or immediately deterred.

181. Boston Scientific's failures were a direct and proximate cause of Plaintiff's injuries.

25

182. As a direct and proximate result of Boston Scientific's statutory violations, Plaintiff suffered bodily invasion, emotional distress, humiliation, anxiety, psychological trauma, loss of dignity, pain and suffering, loss of employment opportunity, and other injuries.

183. Plaintiff's injuries are continuing in nature.

184. Pursuant to the Illinois Gender Violence Act, Plaintiff is entitled to recover actual damages, damages for emotional distress, punitive damages, attorneys' fees, costs, and such other relief as permitted by law.

WHEREFORE, Plaintiff Jane Doe respectfully requests judgment in her favor and against Defendants Boston Scientific Corporation, Boston Scientific Cardiac Diagnostic Services, LLC, Boston Scientific Sales, Inc., and Boston Scientific Neuromodulation Corporation on Count IX, together with actual damages, damages for emotional distress, punitive damages, attorneys' fees, costs, prejudgment and post-judgment interest, and such other and further relief as the Court deems just and proper.

## COUNT X
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against Defendant Nicholas Barcelona)

185. Plaintiff realleges paragraphs 1 through 184 as though fully set forth herein.

186. Barcelona's conduct was extreme and outrageous.

187. Among other things, Barcelona used his position as the purported hiring decision-maker and gatekeeper to lure Plaintiff to what was represented as a professional interview, induced Plaintiff's intoxication, took Plaintiff to his residence under false pretenses, engaged in non-consensual sexual conduct, and then caused or contributed to the denial and withholding of the employment opportunity.

26

188. Barcelona knew Plaintiff was vulnerable, intoxicated, dependent upon his asserted authority over her candidacy, and unable to meaningfully protect herself from his misconduct.

189. Barcelona knew there was a high probability that his conduct would cause Plaintiff severe emotional distress, or acted with reckless disregard of that probability.

190. Barcelona in fact caused Plaintiff to suffer severe emotional distress.

191. As a direct and proximate result of Barcelona's conduct, Plaintiff suffered severe emotional distress, humiliation, anxiety, psychological trauma, pain and suffering, loss of dignity, and other damages.

192. Plaintiff's injuries are continuing in nature.

WHEREFORE, Plaintiff Jane Doe respectfully requests judgment in her favor and against Defendant Nicholas Barcelona on Count X, together with compensatory damages, punitive damages to the fullest extent permitted by law, prejudgment and post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

## COUNT XI
## RESPONDEAT SUPERIOR / VICARIOUS LIABILITY
### (Against Defendant Boston Scientific)

193. Plaintiff realleges paragraphs 1 through 192 as though fully set forth herein.

194. At all relevant times, Defendant Nicholas Barcelona was an employee, agent, apparent agent, and/or management representative of Boston Scientific.

195. At all relevant times, Boston Scientific placed Barcelona in a management-level role and cloaked him with actual and/or apparent authority over Plaintiff's candidacy, including authority to communicate with Plaintiff regarding the position, direct the interview process, control

Plaintiff's access to the employment opportunity, and act as the hiring contact, decision-maker, and gatekeeper for the Area Business Strategist position.

196. Barcelona used the authority, power, and instrumentalities Boston Scientific gave him in the hiring process to arrange and conduct what was represented to Plaintiff as a professional interview and recruiting interaction.

197. Barcelona's interaction with Plaintiff arose directly out of the hiring process Boston Scientific authorized him to conduct and out of the authority Boston Scientific vested in him over Plaintiff's candidacy.

198. Barcelona's tortious conduct was committed while he was purporting to act for Boston Scientific, while exercising authority Boston Scientific gave him over Plaintiff's candidacy, and while using the hiring process and interview-related interactions Boston Scientific authorized him to conduct.

199. Barcelona was aided in accomplishing the tortious conduct alleged herein by the existence of the agency relationship and by the actual and/or apparent authority Boston Scientific vested in him.

200. In the alternative, Boston Scientific is vicariously liable for Barcelona's tortious conduct because Boston Scientific placed him in a position of authority over Plaintiff, enabled him to use that authority in connection with the hiring process, and allowed him to exploit that authority to commit the misconduct alleged herein.

201. By reason of the foregoing, Boston Scientific is liable under the doctrine of respondeat superior and/or vicarious liability for Barcelona's conduct, including the battery and intentional infliction of emotional distress alleged in this Complaint.

202.     As a direct and proximate result of Barcelona's conduct, for which Boston Scientific is vicariously liable, Plaintiff suffered bodily invasion, humiliation, severe emotional distress, pain and suffering, loss of employment opportunity, and other damages.

203.     Plaintiff's injuries are continuing in nature.

WHEREFORE, Plaintiff Jane Doe respectfully requests judgment in her favor and against Defendants Boston Scientific Corporation, Boston Scientific Cardiac Diagnostic Services, LLC, Boston Scientific Sales, Inc., and Boston Scientific Neuromodulation Corporation on Count XI, together with compensatory damages, punitive damages to the fullest extent permitted by law, prejudgment and post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

**COUNT XII**
**NEGLIGENT HIRING**

**(Against Defendant Boston Scientific)**

204.     Plaintiff realleges paragraphs 1 through 203 as though fully set forth herein.

205.     Boston Scientific owed Plaintiff, as a foreseeable applicant interacting with its management-level hiring personnel, a duty to use reasonable care in hiring employees who would be placed in positions of authority over applicants.

206.     Prior to hiring and/or placing Barcelona in a management-level role that gave him authority over female applicants, Boston Scientific knew or should have known that Barcelona had a particular unfitness for such a role, including a propensity to misuse authority over women, to exploit one-on-one interactions, and to create or take advantage of coercive, sexually charged, and/or otherwise improper situations.

207. That particular unfitness made it objectively foreseeable that placing Barcelona in a position of authority over female applicants, including authority to meet applicants alone, direct interview settings, consume alcohol with applicants, and control their access to employment opportunities, would create a danger of harm to applicants such as Plaintiff.

208. Despite that actual or constructive knowledge, Boston Scientific hired and/or placed Barcelona in a management-level role that gave him unsupervised hiring-related authority over Plaintiff and other applicants.

209. Boston Scientific failed to exercise reasonable care in screening, vetting, investigating, and/or hiring Barcelona for a role that gave him authority over applicants and access to one-on-one interview-related interactions outside ordinary workplace safeguards.

210. Had Boston Scientific exercised reasonable care in hiring and/or placing Barcelona in that role, Barcelona would not have been in a position to exploit his authority over Plaintiff during the June 5, 2025 interview-related interaction.

211. Boston Scientific's negligent hiring was a direct and proximate cause of Plaintiff's injuries.

212. As a direct and proximate result of Boston Scientific's negligent hiring, Plaintiff suffered bodily invasion, emotional distress, humiliation, anxiety, psychological trauma, loss of dignity, pain and suffering, loss of employment opportunity, loss of wages and future earning capacity, professional and reputational harm, and other damages.

213. Plaintiff's injuries are continuing in nature.

WHEREFORE, Plaintiff Jane Doe respectfully requests judgment in her favor and against Defendants Boston Scientific Corporation, Boston Scientific Cardiac Diagnostic Services, LLC, Boston Scientific Sales, Inc., and Boston Scientific Neuromodulation Corporation on Count XII, together with compensatory damages, punitive damages to the fullest extent permitted by law where recoverable, prejudgment and post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

## COUNT XIII
## NEGLIGENT SUPERVISION

### (Against Defendant Boston Scientific)

214. Plaintiff realleges paragraphs 1 through 213 as though fully set forth herein.

215. Boston Scientific owed Plaintiff, as a foreseeable applicant interacting with its management-level hiring personnel, a duty to use reasonable care in supervising, monitoring, training, and controlling employees placed in positions of authority over applicants.

216. In the employment context, it was objectively and generally foreseeable that placing a male management-level employee in an unsupervised gatekeeper role over female applicants, and permitting him to control one-on-one in-person meetings involving alcohol and after-hours interactions, created a risk of coercion, abuse of authority, sexual misconduct, and harm.

217. At all relevant times, Boston Scientific knew or reasonably should have known that Barcelona was likely to engage in dangerous conduct if left unsupervised in one-on-one interview-related interactions with female applicants.

218. Boston Scientific failed to exercise reasonable care in supervising, monitoring, training, and controlling Barcelona.

31

219. Among other things, Boston Scientific failed to implement or enforce reasonable safeguards governing applicant interviews, including safeguards concerning one-on-one offsite interviews, alcohol consumption in interview-related meetings, after-hours interactions, the use of private residences in connection with recruiting activity, and oversight of management personnel acting as hiring gatekeepers.

220. Boston Scientific permitted Barcelona to act as an unsupervised gatekeeper over female applicants, including Plaintiff, and permitted him to conduct one-on-one interview-related interactions with female applicants outside normal workplace safeguards.

221. Boston Scientific's negligent supervision created or substantially increased the risk that Barcelona would exploit his role and authority to harm Plaintiff and other applicants.

222. Had Boston Scientific exercised reasonable care in supervising, monitoring, training, and controlling Barcelona, his conduct toward Plaintiff would have been prevented or immediately deterred.

223. Boston Scientific's negligent supervision was a direct and proximate cause of Plaintiff's injuries.

224. As a direct and proximate result of Boston Scientific's negligent supervision, Plaintiff suffered bodily invasion, emotional distress, humiliation, anxiety, psychological trauma, loss of dignity, pain and suffering, loss of employment opportunity, loss of wages and future earning capacity, professional and reputational harm, and other damages.

225. Plaintiff's injuries are continuing in nature.

WHEREFORE, Plaintiff Jane Doe respectfully requests judgment in her favor and against Defendants Boston Scientific Corporation, Boston Scientific Cardiac Diagnostic Services, LLC, Boston Scientific Sales, Inc., and Boston Scientific Neuromodulation Corporation on Count XIII, together with compensatory damages, punitive damages to the fullest extent permitted by law where recoverable, prejudgment and post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

## COUNT XIV
## NEGLIGENT RETENTION

### (Against Defendant Boston Scientific)

226. Plaintiff realleges paragraphs 1 through 225 as though fully set forth herein.

227. Boston Scientific owed Plaintiff, as a foreseeable applicant interacting with its management-level hiring personnel, a duty to use reasonable care in retaining only fit employees in positions of authority over applicants.

228. Prior to and on June 5, 2025, Boston Scientific knew or should have known that Barcelona had a particular unfitness for continued retention in a management-level role that gave him authority over female applicants, including authority to meet applicants alone, direct interview settings, consume alcohol with applicants, and control their access to employment opportunities.

229. That particular unfitness rendered Plaintiff's injuries foreseeable to a person of ordinary prudence in Boston Scientific's position.

230. Despite that knowledge, Boston Scientific retained Barcelona in that role, allowed him to continue exercising hiring-related authority, and failed to remove, restrict, reassign, monitor, or otherwise control him before he harmed Plaintiff.

231. Boston Scientific failed to exercise reasonable care in retaining Barcelona in a management-level role that gave him access to and power over female applicants such as Plaintiff.

232. Had Boston Scientific exercised reasonable care in retaining Barcelona, it would not have allowed him to remain in a position to exploit his authority over Plaintiff during the June 5, 2025 interview-related interaction.

233. Boston Scientific's negligent retention was a direct and proximate cause of Plaintiff's injuries.

234. As a direct and proximate result of Boston Scientific's negligent retention, Plaintiff suffered bodily invasion, emotional distress, humiliation, anxiety, psychological trauma, loss of dignity, pain and suffering, loss of employment opportunity, loss of wages and future earning capacity, professional and reputational harm, and other damages.

235. Plaintiff's injuries are continuing in nature.

WHEREFORE, Plaintiff Jane Doe respectfully requests judgment in her favor and against Defendants Boston Scientific Corporation, Boston Scientific Cardiac Diagnostic Services, LLC, Boston Scientific Sales, Inc., and Boston Scientific Neuromodulation Corporation on Count XIV, together with compensatory damages, punitive damages to the fullest extent permitted by law where recoverable, prejudgment and post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

**WHEREFORE**, Plaintiff Jane Doe respectfully requests that the Court enter judgment in her favor and against Defendants, and award the following relief:

A. Compensatory damages in an amount to be determined at trial;

B. Back pay, lost wages, lost employment benefits, and other make-whole relief;

C. Front pay and/or equitable relief sufficient to make Plaintiff whole;

D. Damages for emotional distress, humiliation, mental anguish, pain and suffering, and professional and reputational harm;

E. Punitive damages to the fullest extent permitted by law;

F. Prejudgment and post-judgment interest as allowed by law;

G. Attorneys' fees and costs, including pursuant to 42 U.S.C. § 2000e-5(k);

H. Injunctive and equitable relief as appropriate;

I. Such other and further relief as the Court deems just and proper.


**JURY DEMAND**

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,
JANE DOE, *Plaintiff*


By: /s/ _____

**ZANE D. SMITH & ASSOCIATES, LTD.**
100 N. LaSalle St., Suite 910
Chicago, Illinois 60602
Phone: (312) 245-0031
Fax: (312) 245-0022
Zane@zanesmith.com
Boris@zanesmith.com
Evan@zanesmith.com
Julia@zanesmith.com
melanie@zanesmith.com